Good morning. Gerald Brannan appearing on behalf of Charles Hale. I want to focus my remarks this morning on why the admission of the horrific gang rape and sodomy of the deaf girl by gang members other than Hale qualified or rendered the trial fundamentally unfair and a violation of due process. And the question, I think, is at what point does the admission of prejudicial gang association and propensity evidence rise to the level of a due process violation warranting habeas corpus relief? In order to assess that question in this case, I think we have to look at the entire picture of the case. This was an eyewitness case involving a completed rape in concert, a consummated act of violence that did not require proof of motive or intent for the jury's understanding of the case. The prosecution apparently agreed because they didn't charge any gang enhancements. They didn't charge the case as a gang case, a gang-related case, probably because the offense bore no gang signature and there were no gang enhancements charged. So nevertheless, the prosecution prosecuted the case as a gang case and even assuming that Hale's gang membership was admissible to prove his motive. The flood of gang propensity evidence and gang association evidence dominated the trial and invited the jurors, frankly, to convict Hale based on guilt by association. What weight should we give to the fact, as I understand it, the sole objection raised to the deaf girl testimony, the rape there, was relevance. Am I correct that that was the only objection? Yes. How should we, when we're looking at this then, we're not really looking at it as a 403 issue at all. It's a relevance issue. Well, I think they're intertwined. I think in a case like this, he was arguing against the introduction of all this gang propensity evidence. I think he objected intensely to the introduction of the prior gang shooting, which he just addressed in the last case, and the court let that in, in full detail, and then he objected to this. So I think that that element is there. That element is very much there. Well, do we change the analysis? I mean, my colleague kind of stole my question. It seems to me if I'm on a relevant analysis, that's totally different than a 403 analysis. Well, in some respects, yes, but I think that if you're objecting to the introduction of a whole line of gang association evidence and propensity evidence, I think it doesn't apply to 403. Go ahead, Judge Goldberg. If I could ask one theory question. When there's been an objection on relevance, but now it's argued that there's undue prejudice, do we review that aspect of the issue for plain error, or is it sort of a straight analysis? Well, I think you have to look at the trial court's basis for admitting the evidence and decide whether that was reasonable or unreasonable. And the issue is, I think this court granted a COA in this case in order to test the limits of fundamental fairness when it comes to the admission of propensity evidence. I mean, that's why COA was granted. Well, I mean, COA was granted, and I don't have any trouble with being granted. My worry is that now we're faced with this particular situation in, I mean, if I read Hawley, which is our case, it says the Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process, and has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation. That's my court telling me this doesn't make due process because the Supreme Court has never said it does. And now you're asking me on an objection on relevance to overturn that. Well, this court, I think this court is looking for a case to test those limits. You're right about the Supreme Court not clearly defining. So if the Supreme Court hasn't clearly defined, how am I to make that determination? Well, I would refer. Isn't this an ADPA matter? Yes. Yes, it is. If you're not relying on Supreme Court precedent, then we really can't develop a theory of Ninth Circuit law. Well, let me, if I could, just quote Judge McEwen in Albany in his dissent and address that question. He points out that the Supreme Court's reservation of a specific question does not in itself preclude Haber's review under ADPA, and the federal courts may still test the state court decision against clearly established underlying constitutional principles. And on that basis, I'm asking, I think the question before this court is, can you do that? He further says. Well, I appreciate that Judge McEwen can write that kind of stuff. Let's turn to another. Supposing that I say, well, this is a little worrisome to me. Isn't this harmless anyway? Well, with all the evidence at the home, with all the victim testimony and the male student testimony that in fact your client was the guy, I'm having a tough time understanding why this isn't harmless error at best. Well, my question would be, based on this case and the evidence that was introduced, can we say with any certainty that no juror convicted Hale based on guilt by association after the introduction of this horrific way? Well, you didn't really answer my question. You're going to something totally different. I mean, there's quite a bit of evidence here. Even if I swallow what you're trying to get me to buy, there's so much evidence about what was in his home, what the victim said, what the male student said. This evidence really had no input into whether the jury would do what they wanted to do in this case. Are you talking about the evidence of the horrific rape? Right. Well, I guess my response would be, at what point does the admission of potentially highly inflammatory prejudicial evidence render a trial fundamentally unfair? When it isn't harmless. That's why I wanted you to talk about the harmless standard. It's a matter of degree. And you have these competing factors. You have due process and fundamental fairness. And then you have this evidence, which I guess arguably has some relevance with respect to motive. Why did defense counsel ask the questions about rapes by strangers? All these questions, if he didn't know the answer. I don't know. I can't answer that. Well, I mean, that's what got us into this. You mean that's why? Well, actually, what troubles me is defense counsel brings this issue to the trial, in effect, asks all these questions, doesn't know what the answer he's going to get, and then tries to get out of the problem he was in after getting in there. Being an old trial judge, that really kind of said to me, come on. Well, there was no resemblance between the instant offense and the horrific rape. There was no, this had no, there was no comparison between the two. And there was no prior gang rapes that were introduced that resembled the instant offense. What was the evidence, counsel? What, in a nutshell, was the evidence that identified Hale as the person standing with a gun to the rape victim's head and, you know, forcing her to submit? Well, there's the eyewitness. There was the victim who was unsure. So, as he walked away, right? Correct. The victim, was she on the ground? Okay, so the victim. Then did anyone else identify him? Well, there was another student, a male student at Riverside City College, that saw the poster or the sketch artist's image of the rapist. Sketch artist was unable to develop an image of the gunman. And he said he saw these two guys and he said that he recognized them from this poster, or recognized one of them. He saw, he recognized the rapist and this guy was walking with the rapist? This guy was, yeah, they were together. So, I mean, but the prosecution didn't rely completely on that. They wanted to bring in all this stuff about this gang evidence. And the gang, and the gang expert, I mean, he just went into a whole litany of stuff. He testified about the nature of the gang, its characteristics, customs, activities, its territory, how the territories changed, and even about how the Mexican mafia controlled all Hispanic Sorrento gangs. Well, we've heard your argument. Thank you, Counselor. I think we're ready for the State. Mr. Cate, Warden Cate. Good morning, Your Honors. May it please the Court, Deputy Attorney General Teresa Torreblanca for Respondent and Pele, Matthew Cate. As Your Honor pointed out, the controlling case in this situation is Hawley v. Yarborough, where this circuit said that under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not forbidden by clearly established federal law as laid out by the Supreme Court. Hale does not cite any controlling United States Supreme Court authority addressing whether an expert can testify about other crimes committed by the defendant's gang to show that it's the type of crime that's committed by that particular gang. Instead, he points to cases which generally provide the defendant a right to due process and fundamentally fair trial by not having prejudicial evidence be admitted that renders the trial fundamentally unfair, and under Hawley, that's clearly insufficient. But even if that were not the case and the cases that he cited were sufficient, in this case, the admission of the evidence in no way rendered this trial fundamentally unfair. In Jamal v. Vandekamp, this circuit explained that the admission of evidence violates due process only if there's no rational inference that can be drawn from the evidence and it's the type of evidence that renders the trial fundamentally unfair. As the state court found and as the district court found, this evidence was definitely relevant because it supported the expert's opinion that this was the type of crime that this particular gang commits to enhance its loyalty or prove its loyalty to the gang. Most people, when they think about rape, they don't think about it as being a gang-related crime, but the expert's testimony in this case about the rape definitely supported his opinion that in this case it was. Also, this evidence did not prevent Hale from receiving a fair trial or have a substantial and injurious effect on the jury's verdict because even without the rape evidence, the jury knew that Hale had been labeled as a snitch for the prior drive-by shooting case and that his motive in committing this crime was to prove his loyalty to the gang, as evidenced by the fact that he said that he said to the rapist, this counts, dog. This counts, dog. This counts. In addition, the victim identified Hale through a photographic lineup, an in-person lineup where she heard the defendant's voice and in court. And while her confidence in that ID varied, it was from 75 to 90 percent. And that ID was also corroborated by McLeod's testimony that he saw both Hale and the rapist on campus that day. He was in their presence for about a half an hour and 45 minutes, and he was 99.9 percent certain that Hale was the person that he saw acting suspiciously on campus that day. Her ID was also corroborated by the items that were found in Hale's house, and those included the black do-rag, the Oakley-style sunglasses, the latex glove, and the gun, all of which provided independent reliability for that identification. Yeah, what is a do-rag? I read that. I wasn't familiar with the term. It's a piece of cloth that goes over the head and ties, I think, behind the head. And that's what she described Hale as wearing on the day of the rape. So based on that fact, it cannot be said that Hale was denied due process in this case. Unless the Court has any questions, I'd like to move real quick to the other issue. I won't go into detail, but I did want to invite this Court's attention to the opinion issued by the United States Supreme Court yesterday in Nevada v. Jackson, holding that the Nevada State Court did not unreasonably deny the Petitioner his constitutional right to present a defense when it excluded certain extrinsic evidence to impeach a rape victim's credibility. In that case, the Supreme Court explained that none of its prior decisions clearly established the exclusion of the evidence violated the Petitioner's constitutional rights. Unless the Court has any questions. Do you have any questions, Judge Gould? No questions here, thank you. Thank you, Counselor. The case of Hale v. Cate, Case 10-56906, will be submitted. And we will move then to Case 11-559.
judges: Gleason, Gould, Smith